IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUSAN LOUISE GIER,<br><br>    Plaintiff,<br><br>    vs.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>    Defendant.<br>_____/ | No. 2:16-CV-2803-MCE-CMK<br><br><br>FINDINGS AND RECOMMENDATIONS |

       Plaintiff, who is proceeding with retained counsel, brings this action under 42 U.S.C. § 405(g) for judicial review of a final decision of the Commissioner of Social Security. Pending before the court are plaintiff's motion for summary judgment (Doc. 16) and defendant's cross-motion for summary judgment (Doc. 19).

/ / /

/ / /

/ / /

/ / /

/ / /

# I. PROCEDURAL HISTORY

Plaintiff applied for social security benefits on June 21, 2013. In the application, plaintiff claims that disability began on June 18, 2012. Plaintiff's claim was initially denied. Following denial of reconsideration, plaintiff requested an administrative hearing, which was held on May 20, 2015, before Administrative Law Judge ("ALJ") Peter F. Belli. In an August 7, 2015, decision, the ALJ concluded that plaintiff is not disabled based on the following relevant findings:

1. The claimant has the following severe impairment(s): fibromyalgia and anxiety;

2. The claimant does not have an impairment or combination of impairments that meets or medically equals an impairment listed in the regulations;

3. The claimant has the following residual functional capacity: the claimant can perform light work except she can sit, stand, and walk for 6 hours in an 8-hour day, cannot do prolonged standing or walking, and requires a change of position every 40 minutes without leaving the workstation; she cannot climb ladders, ropes, and scaffolds, and is limited to occasional stooping, crouching, crawling, kneeling, and overhead reaching with both upper extremities; she is able to interact with the public, coworkers, and supervisors, can make workplace judgments, adjust to changes at work, and frequently receive, understand, and carry out simple, complex, and detailed job instructions; and

4. Considering the claimant's age, education, work experience, residual functional capacity, and vocational expert testimony, plaintiff is capable of performing her past relevant work as a benefits clerk II and contract administrator.

After the Appeals Council declined review on September 30, 2016, this appeal followed.

# II. STANDARD OF REVIEW

The court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). It is ". . . such evidence as a reasonable mind might accept as adequate to

support a conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971). The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed. See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence. See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive. See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

### III. DISCUSSION

In her motion for summary judgment, plaintiff argues: (1) the ALJ failed to properly evaluate the medical opinions of Drs. Chiong and Nagaraj and therapist Esquivel; and (2) the ALJ failed to account for plaintiff's obesity, degenerative disc disease, and moderate limitations in concentration, persistence, and pace in determining her residual functional capacity.

**A.** **Evaluation of Medical Opinions**

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. See Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual, than the opinion of a non-treating professional. See id.; Smolen v. Chater, 80 F.3d 1273, 1285

(9th Cir. 1996); Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987). The least weight is given to the opinion of a non-examining professional. See Pitzer v. Sullivan, 908 F.2d 502, 506 & n.4 (9th Cir. 1990).

In addition to considering its source, to evaluate whether the Commissioner properly rejected a medical opinion the court considers whether: (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. The Commissioner may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons supported by substantial evidence in the record. See Lester, 81 F.3d at 831. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by an examining professional's opinion which is supported by different independent clinical findings, the Commissioner may resolve the conflict. See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995). A contradicted opinion of a treating or examining professional may be rejected only for "specific and legitimate" reasons supported by substantial evidence. See Lester, 81 F.3d at 830. This test is met if the Commissioner sets out a detailed and thorough summary of the facts and conflicting clinical evidence, states her interpretation of the evidence, and makes a finding. See Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989). Absent specific and legitimate reasons, the Commissioner must defer to the opinion of a treating or examining professional. See Lester, 81 F.3d at 830-31. The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional. See id. at 831. In any event, the Commissioner need not give weight to any conclusory opinion supported by minimal clinical findings. See Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (rejecting treating physician's conclusory, minimally supported opinion); see also Magallanes, 881 F.2d at 751.

/ / /

/ / /

/ / /

4

In this case, the ALJ relied on the opinions of agency examining professionals Drs. Price and Chiong, as well as those of agency reviewing professionals Drs. A. Pan and M. Acinas. The ALJ also gave "some weight" to the opinions of agency reviewing professionals Jennifer Duffy, Ph.D., and Nadine Genece, Psy.D. Dr. Price opined that plaintiff had mild impairment in the ability to interact with supervisors and co-workers, understand and carry out simple, complex, and detailed instructions, deal with the public, maintain concentration, persistence, or pace, and withstand everyday work pressure. See CAR at Exhibit 6F.[1] Dr. Chiong opined that the claimant could stand and walk for up to 4 hours in an 8-hour workday, occasionally stoop, crouch, crawl, kneel, and perform gross and fine finger manipulations, and frequently reach upward and outward. See id. at Exhibit 7F. As to Drs. Pan and Acinas, the ALJ stated:

> . . .[T]he undersigned has considered the opinions made by the state agency physicians. The state agency medical consultants, A. Pan, M.D., and M. Acinas, M.D., opined that the claimant could perform light work, occasionally climb, stoop, kneel, crouch, crawl, and reach overhead (1A; 3A). . . .

As to Drs. Duffy and Genece, whose opinions were given "some weight", the ALJ stated:

> The state agency psychological consultants, Jennifer Duffy, Ph.D., and Nadine Genece, Psy, D., opined that the claimant had mild restrictions in activities of daily living, difficulties maintaining social functioning, and difficulties maintaining concentration, persistence, or pace, and no episodes of decompensation (1A; 3A). . . .

Though these doctors opined that plaintiff has only mild limitation in the ability to maintain concentration, persistence, and pace, in discounting the weight assigned to their opinions the ALJ stated: ". . . [T]he claimant has at most moderate limitations in concentration." See CAR 26. The ALJ does not explain how the doctors' opinion of mild limitation is inconsistent with no more than moderate limitation.

---

[1] Citations are to the Certified Administrative Record lodged on April 25, 2017. (Doc. 14).

1. <u>Dr. Chiong</u>

As to Dr. Chiong, the ALJ stated:

> In addition to the aforementioned objective medical studies, the undersigned also considered the findings of the physical consultative examiner, Aung-Win Chiong, M.D., who examined the claimant on September 26, 2013 (7F). The claimant walked into the examination room without an assistive device for ambulation, and got on and off the examination table without difficulty. Although she had tenderness to palpation of the neck and trigger points with tenderness over approximately 16 areas across her body, she demonstrated negative straight leg raise, no back tenderness or diminished range of motion, strong grip strength, and a normal gait. Dr. Chiong diagnosed the claimant with chronic Epstein-Barr virus, fibromyalgia, chronic vertigo, and chronic neck pain. . . .
>
> * * *
>
> Dr. Chiong opined that the claimant could stand and walk for up to 4 hours in an 8-hour workday, occasionally stoop, crouch, crawl, kneel, and perform gross and fine finger manipulations, and frequently reach upward and outward (7F). The undersigned accords great weight to this opinion, because although the claimant can stand and walk for 6 hours in an 8-hour day, the overall opinion is consistent with the totality of evidence, as she still has a reduced ability to perform prolonged standing. The claimant appeared unsteady on her feet and had difficulty with sitting, standing, and finding a comfortable position at her . . . . consultative examination (6F). Imaging in January 2015 revealed multilevel degenerative disc disease in her cervical spine (15F/2). However, she could run 2 miles in 2013. . . .

Plaintiff argues: "The ALJ assigned 'great weight' to Dr. Chiong's opinion but then failed to articulate specific and legitimate reasons for not adopting the opinion in full." In particular, plaintiff argues that the ALJ erred in failing to explain why he did not accept Dr. Chiong's opinion that plaintiff can stand/walk for no more than 4 hours in an 8-hour day, and Dr. Chiong's opinion that plaintiff can only occasionally perform gross and fine manipulation.[2]

/ / /

/ / /

/ / /

---

[2] The ALJ included no limitations to gross or fine manipulation in his residual functional capacity assessment.

6

Additionally, plaintiff contends that the ALJ has misstated the record. First, plaintiff argues that the ALJ incorrectly stated that plaintiff was able to run 2 miles in 2013. According to plaintiff, the evidence indicates that she reported in August 2013 being able to walk 2 miles per day. See CAR at Exhibit 4F. Second, plaintiff argues that the ALJ incorrectly characterized Dr. Chiong's examination findings and showing that plaintiff had no diminished range of motion. According to plaintiff, Dr. Chiong actually found "significant range of motion issues. . . ." See id. at 429-32.

While defendant has responded to plaintiff's argument regarding the ALJ's treatment of Dr. Chiong's stand/walk limitation, defendant does not address the remainder of plaintiff's arguments as to Dr. Chiong.

The court finds that the ALJ did not misstate the record with respect to range of motion. The ALJ noted that Dr. Chiong did not observe diminished range of motion of the back. Contrary to plaintiff's assertion, Dr. Chiong's report does not reflect significant range of motion issues with respect to her back. As the ALJ correctly observed, Dr. Chiong observed no diminished range of motion of the back. See id. at 430 ("Range of motion of the lumbar spine is normal").

The ALJ did, however, misstate the record with respect to plaintiff's ability to run 2 miles in 2013. This error is reflected in the ALJ's hearing decision. In discussing plaintiff's medical history, he correctly noted that plaintiff reported in August 2013 that she walked 2 miles per day. See CAR at 22; Exhibit 4F. There is no support in the record for the ALJ's statement that plaintiff could run 2 miles in 2013.

The court also agrees with plaintiff that the ALJ failed to provide sufficient reasons for rejecting Dr. Chiong's stand/walk limitation and limitation on gross and fine manipulations. To discount an examining professional's opinion, the ALJ must set out a detailed and thorough summary of the facts and conflicting clinical evidence and state his interpretation of the evidence. See Magallanes, 881 F.2d at 751-55. As to Dr. Chiong's stand/walk limitation

the ALJ discounted the opinion because ". . .the claimant can stand and walk for 6 hours in an 8-hour day. . . ." The ALJ, however, failed to cite supporting evidence or opinions in this regard. As to rejecting Dr. Chiong's limitations to gross and fine manipulations, the ALJ provided no discussion whatsoever.

The matter should be remanded for further consideration of Dr. Chiong's opinions, in particular the doctor's limitations as to standing, walking, and manipulations.

2. <u>Dr. Nagaraj</u>

As to Dr. Nagaraj, the ALJ stated:

> On September 10, 2014, M. Nagaraj, M.D., opined that the claimant must change positions frequently and can stand for 30 minutes in an 8-hour workday. She can occasionally bend, balance, crawl, reach, handle, feel, and move her neck. She can never climb, stoop, crouch, kneel, push, or pull, and should avoid chemicals, pulmonary irritants, humidity, and vibration. Her pain would interfere with her concentration for 50% of the day, and would cause her to be absent more than 4 days per month (12F). The undersigned accords partial weight to this overall opinion and gives great weight to Dr. Nagaraj's opinion that the claimant must frequently change positions, occasionally reach, and never climb ladders, ropes, and scaffolds due to its consistency with the totality of the evidence. Little weight is given to this opinion to the extent that it overestimates the claimant's limitations and is inconsistent with the totality of the evidence. While the claimant appeared unsteady on her feet and had difficulty with sitting, standing, and finding a comfortable position at her psychological consultative examination, she was able to walk 2 miles in 2013 (6F; 17F/7). By March 2015, the claimant was able to do yoga, reported that it helped her neck pain, and demonstrated a normal gait and physical examination (17F/4, 6).
>
> Additionally, the claimant demonstrated no difficulty counting backwards, with memory, or with following simple directions at her psychological consultative examination, indicating her concentration is not as limited as this opinion suggests.

As with Dr. Chiong, plaintiff argues that the ALJ erred by failing to articulate sufficient reasons for not accepting Dr. Nagaraj's opinion in full.

/ / /

/ / /

/ / /

The court agrees. As with Dr. Chiong, the ALJ appears to reject many of Dr. Nagaraj's opinions but has not articulated specific reasons for doing so. While the ALJ cites generally to inconsistency with the totality of the evidence, the ALJ does not connect specific inconsistencies with Dr. Nagaraj's specific opinions. For example, the ALJ does not explain what evidence is inconsistent with Dr. Nagaraj's finding that plaintiff can stand for only 30 minutes in an 8-hour day. Likewise, the ALJ does not cite the evidence that is inconsistent with the doctor's findings that plaintiff's pain would interfere with her concentration for 50% of the day, and would cause her to be absent more than 4 days per month.

The matter should be remanded for further consideration of Dr. Nagaraj's opinions.

### 3. Ms. Esquivel

As to Ms. Esquivel, the ALJ stated:

> On October 15, 2013, Judith Esquivel, MFT, opined that the claimant had a marked limitation in activities of daily living and maintaining concentration, persistence, or pace, and had three or more repeated episodes of decompensation (14F). The undersigned accords little weight to her opinion as it is inconsistent with the totality of evidence. The claimant's psychiatric symptoms and ability to cope improved with treatment, and by October 2014, her symptoms were less severe, her mood was improved and appropriate, and her interpersonal functioning had improved greatly (16F/15). There is no evidence that the claimant has ever had an inpatient psychiatric hospitalization. Further, she is able to independently perform activities of daily living, interact with others, and demonstrated normal memory and attention at examinations (3E; 6F).

Plaintiff argues that the ALJ erred in stating that Ms. Esquivel's opinion was issued in October 2013 because it was actually issued in October 2014 and that, because of this error, the "ALJ was not even evaluating the opinion against the correct time period for consistency." Plaintiff also argues that, contrary to the ALJ's statement, her condition did not improve.

///

///

///

The court finds no error. As defendant notes, there is no evidence in the record to support Ms. Esquivel's finding that plaintiff experienced repeated episodes of decompensation. Plaintiff does not cite to any evidence supporting Ms. Esquivel's assessment in this regard. Regardless of other potential problems with the ALJ's analysis, this inconsistency alone was a sufficient basis to discount Ms. Esquivel's opinions. A review of Ms. Esquivel's report reflect that it is check-the-box form devoid of any references to objective evidence. See CAR 515-22; see also Meanel, 172 F.3d at 1113; Magallanes, 881 F.2d at 751. Ms. Esquivel's opinion is also inconsistent with the opinion of Dr. Price who, upon examination, found no more than mild restrictions in any category of mental functioning. See CAR at Exhibit 6F.

**B.     Residual Functional Capacity Assessment**

Residual functional capacity is what a person "can still do despite [the individual's] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a) (2003); see also Valencia v. Heckler, 751 F.2d 1082, 1085 (9th Cir. 1985) (residual functional capacity reflects current "physical and mental capabilities"). Thus, residual functional capacity describes a person's exertional capabilities in light of his or her limitations.[3] In determining residual functional capacity, the ALJ must also assess what the plaintiff can still do in light of mental limitations. See 20 C.F.R. §§ 404.1545(a), 416.945(a) (2003); see also Valencia v. Heckler, 751 F.2d 1082, 1085 (9th Cir. 1985) (residual functional capacity reflects current "physical and mental

---

[3]     Exertional capabilities are the primary strength activities of sitting, standing, walking, lifting, carrying, pushing, or pulling and are generally defined in terms of ability to perform sedentary, light, medium, heavy, or very heavy work. See 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(a). "Sedentary work" involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. See 20 C.F.R. §§ 404.1567(a) and 416.967(a). "Light work" involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. See 20 C.F.R. §§ 404.1567(b) and 416.967(b). "Medium work" involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. See 20 C.F.R. §§ 404.1567(c) and 416.967(c). "Heavy work" involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. See 20 C.F.R. §§ 404.1567(d) and 416.967(d). "Very heavy work" involves lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more. See 20 C.F.R. §§ 404.1567(e) and 416.967(e).

capabilities").

1. Obesity

In 1999, obesity was removed from the Listing of Impairments.[4] Obesity may still enter into a multiple impairment analysis, but "only by dint of its impact upon the claimant's musculoskeletal, respiratory, or cardiovascular system." Celaya v. Halter, 332 F.3d 1177, 1181 n.1 (9th Cir. 2003). Thus, as part of his duty to develop the record, the ALJ is required to consider obesity in a multiple impairment analysis, but only where it is "clear from the record that [the plaintiff's] obesity . . . could exacerbate her reported illnesses." Id. at 1182; see also Burch v. Barnhart, 400 F.3d 676, 682 (9th Cir. 2005) (distinguishing Celaya and concluding that a multiple impairment analysis is not required where "the medical record is silent as to whether and how claimant's obesity might have exacerbated her condition" and "the claimant did not present any testimony or other evidence . . . that her obesity impaired her ability to work"). Where a multiple impairment analysis is not required, the ALJ properly considers obesity by acknowledging the plaintiff's weight in making determinations throughout the sequential analysis. See Burch, 400 F.3d at 684.

Plaintiff notes that she was diagnosed with obesity by Dr. Nagaraj, see CAR 466, and that she was in the range of extreme obesity in April 2015 with a BMI of 63.33, see id. at 548. Plaintiff argues: "The ALJ never discussed Ms. Gier's obesity or considered the combined impact of her obesity along with her other impairments." Defendant argues that the ALJ was not required to discuss plaintiff's obesity because "Plaintiff has failed to specify any functional limitations due to obesity which would have impacted the ALJ's analysis."

///

///

---

[4] Under SSR 02-01p, a person with body mass index ("BMI") of 30 or above is considered obese. BMI is the ratio of an individual's weight in kilograms to the square of height in meters (weight divided by square of height).

11

As stated above, the ALJ need only consider obesity as part of a multiple impairment analysis and that such an analysis is required where there is evidence that obesity impacts a plaintiff's ability to work. See Celaya, 332 F.3d at 1181 n.1; Burch, 400 F.3d at 682. Where a multiple impairment analysis is not required, the ALJ must nonetheless consider obesity by at least acknowledging weight in the decision. See Burch, 400 F.3d at 684. In this case, the ALJ failed to even acknowledge plaintiff's obesity. The record reflects that plaintiff was diagnosed with and treated for obesity by Dr. Nagaraj. See CAR 450-470, 483-513, 545-575. In April 2015, plaintiff's body mass index was 36.33, putting her in the "extremely obese" range. See CAR 548. At no point in the hearing decision does the ALJ even mention plaintiff's weight or otherwise acknowledge the obesity diagnosis.

The matter should be remanded for proper consideration of plaintiff's diagnosed obesity.

### 2. Degenerative Disc Disease

Plaintiff alleges that she suffers from a severe impairment caused by degenerative disc disease of the cervical spine and that the ALJ erred by failing to find the impairment severe or include limitations associated with the impairment in plaintiff's residual functional capacity. Specifically, plaintiff alleges that this impairment has resulted in increasing neck pain. Plaintiff notes that she was treated by Dr. Nagaraj for neck pain from January 2015 through April 2015. See CAR 542-569. Plaintiff also notes that, on January 6, 2015, she underwent a cervical spine x-ray which showed muti-level degenerative spine disease. See CAR 569.

In order to be entitled to benefits, the plaintiff must have an impairment severe enough to significantly limit the physical or mental ability to do basic work activities. See 20 C.F.R. §§ 404.1520(c), 416.920(c). In determining whether a claimant's alleged impairment is sufficiently severe to limit the ability to work, the Commissioner must consider the combined effect of all impairments on the ability to function, without regard to whether each impairment alone would be sufficiently severe. See Smolen v. Chater, 80 F.3d 1273, 1289-90 (9th Cir.

1996); see also 42 U.S.C. § 423(d)(2)(B); 20 C.F.R. §§ 404.1523 and 416.923. An impairment, or combination of impairments, can only be found to be non-severe if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work. See Social Security Ruling ("SSR") 85-28; see also Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir. 1988) (adopting SSR 85-28). The plaintiff has the burden of establishing the severity of the impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings. See 20 C.F.R. §§ 404.1508, 416.908. The plaintiff's own statement of symptoms alone is insufficient. See id.

According to plaintiff, she reported increasing neck pain in September 2014 following yoga therapy. Plaintiff states that she was "concerned about the impact of yoga therapy and the poses for the therapy on her worsening neck pain." See CAR 483. On January 6, 2015, a cervical spine x-ray showed degenerative spine disease. See CAR 569. Plaintiff argues:

> . . .The ALJ failed to realize the decline in Ms. Gier's condition as her neck pain worsened. Her pain was consistent with the objective testing, particularly when taken into consideration with her other impairments, like her fibromyalgia. The ALJ did not even consider that Ms. Gier had a severe neck condition or impairment. The ALJ also failed to analyze whether the objective x-ray findings were consistent with Ms. Gier's report of increasing neck pain.

Defendant acknowledges that plaintiff was diagnosed with neck pain and that the January 6, 2015, x-ray showed degenerative disc disease of the cervical spine, but does not otherwise respond to plaintiff's argument.

A review of the hearing decision reflects that the ALJ repeatedly acknowledged diagnoses of chronic neck pain as well as the January 6, 2015, x-ray findings of degenerative disc disease of the cervical spine. See CAR 22. However, the ALJ noted that plaintiff reported in March 2015 that yoga and breathing techniques helped her neck pain. See CAR at Exhibits 15F and 17F. The ALJ also noted that plaintiff's physical examination at that time was normal. See CAR at Exhibit 17F. Plaintiff has not identified any objective evidence of the effect, if any, of plaintiff's neck pain on her ability to perform work-related activities. In contrast, the ALJ

1 identified evidence indicating that, despite the objective findings of degenerative disc disease of
2 the cervical spine, plaintiff reported improvement with yoga and breathing techniques. Because
3 plaintiff failed to meet her burden of establishing the severity of this impairment with objective
4 evidence, the court finds no error in the ALJ's analysis.

         3. <u>Concentration, Persistence, and Pace</u>

6 Plaintiff argues that, while the ALJ found that she has moderate limitations in
7 concentration, persistence, and pace, he erred by failing to include such limitations in his
8 assessment of plaintiff's residual functional capacity. Defendant has not responded to this
9 argument.

10 The ALJ found that plaintiff can frequently receive, understand, and carry out
11 simple, complex, and detailed job instructions. <u>See</u> CAR 20. This finding, however, is
12 inconsistent with the ALJ's finding that plaintiff has moderate limitations in concentration,
13 persistence, and pace and has no difficulty following simple directions. <u>See</u> CAR 19. Though
14 the ALJ concluded that plaintiff has the residual functional capacity to follow complex and
15 detailed instructions, the ALJ does not explain the basis for this finding or discuss plaintiff's
16 ability to follow more than simple instructions. The ALJ also stated that "the claimant's anxiety
17 limits her to frequently receiving simple, complex, and detailed job instructions. . . ." As to this
18 finding, the court observes that, while the ALJ acknowledged a limitation due to anxiety, the
19 concurrent finding that plaintiff can receive even complex and detailed job instructions
20 frequently does not seem to account for this limitation.

21 The matter should be remanded to address the inconsistencies between the ALJ's
22 findings regarding plaintiff's limitations and those regarding her residual functional capacity.
23 / / /
24 / / /
25 / / /
26 / / /

## IV. CONCLUSION

Based on the foregoing, this matter should be remanded under sentence four of 42 U.S.C. § 405(g) for further development of the record and/or further findings addressing the deficiencies noted above. Accordingly, the undersigned recommends that:

1. Plaintiff's motion for summary judgment (Doc. 16) be granted;
2. Defendant's cross motion for summary judgment (Doc. 19) be denied; and
3. This matter be remanded for further proceedings.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within 14 days after being served with these findings and recommendations, any party may file written objections with the court. Responses to objections shall be filed within 14 days after service of objections. Failure to file objections within the specified time may waive the right to appeal. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: March 9, 2018

_____
**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE